UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JEANETTE LUZE, individually and as personal representative of the Estate of Charles Edward Luze;<br><br>    Plaintiff,<br><br>vs.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>    Defendant. | CIV. 16-4017-KES<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

  Plaintiff, Jeanette Luze, brought this action naming Zurich American Insurance Company as the defendant. Jeanette Luze moves for partial summary judgment (Docket 12), and Zurich filed a cross motion for summary judgment. Docket 17.

## FACTS

  The undisputed facts are:

  Farner-Bocken is headquartered in Carroll, Iowa, and Charles Luze was a resident of South Dakota at the time of this incident. Docket 14 ¶ 2. Farner-Bocken employed Charles Luze as a driver. *Id.* ¶ 1. On September 14, 2014, Charles Luze died in a motor vehicle accident while driving a company vehicle that was owned by Farner-Bocken and insured by Zurich. *Id.* ¶¶ 1-2. The liability limit in place on the vehicle at the time of the crash was $1 million. *Id.* ¶ 3. Zurich has not produced any evidence showing that either Farner-Bocken or Charles Luze rejected underinsured motorist (UIM) coverage in writing.

*Id.* ¶ 4. The term "auto" in the policy included trailers and semi-trailers. *Id.* ¶ 6. The Business Auto Coverage form defines category 1 autos as "any autos," *id.* ¶ 7, and it defines category 3 autos as "owned private passenger autos." Docket 15-1 at 8. The policy endorsement defines uninsured motor vehicles as an underinsured motor vehicle, and an underinsured motor vehicle is defined as "a land motor vehicle or trailer for which the sum of all liability bonds or policies at the time of the accident do not provide at least the amount an insured is legally entitled to recover as damages resulting from bodily injury." Docket 14 ¶¶ 9-10.

## I. SUMMARY JUDGMENT

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)). The moving party must inform the court of the basis for its motion and also identify the portion of the record that shows there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

Once the moving party meets its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either by "citing to

2

particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). For purposes of summary judgment, the facts and inferences drawn from those facts are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).[1]

## II. IOWA UNDERINSURED MOTORIST INSURANCE

This case deals with a question of law as to whether Charles Luze was covered by his employer's underinsured motorist insurance policy. The interpretation of an insurance policy is a matter of law to be determined by the court. *A.Y. McDonald Indus., Inc. v. Ins. Co. of N. Am.*, 475 N.W.2d 607, 618 (Iowa 1991). In an action based on diversity of citizenship, a federal district court must apply the substantive law of the state in which it sits, including its conflict-of-law rules. *Drinkall v. Used Car Rentals, Inc.*, 32 F.3d 329, 331 (8th Cir. 1994). So this court will apply South Dakota's conflict-of-law rules to determine which state's insurance laws govern.

---

[1] According to local civil procedure rules, a movant's "statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts." D.S.D. Civ. L.R. 56.1(d).

"South Dakota applies the provisions of the Restatement (Second) of Conflicts of Laws in order to resolve questions about which state's laws govern in particular factual situations." *Stockmen's Livestock Exch. v. Thompson*, 520 N.W.2d 255, 257 (S.D. 1994). The Restatement (Second) Conflict of Laws generally recognizes that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied." Restatement (Second) of Conflict of Laws § 187. "A contract must be construed in accordance with the law of the place where made unless it is shown that it was the intention of the parties to be bound by the law of some other place." *Briggs v. United Servs. Life Ins. Co.*, 117 N.W.2d 804, 806 (S.D. 1962). "The test of the place of a contract is the place where the last act is done by either of the parties which is necessary to complete the contract and give it validity." *Id.* at 807.

Here, the parties have not pointed to a governing choice-of-law provision in the insurance policy, and the court did not find a choice of law provision upon review of the policy. But the UIM endorsement that was added to the policy is titled the "Iowa Uninsured and Underinsured Motorists Coverage." Docket 20-3. The language in the endorsement indicates the parties' intention to be bound by the law of Iowa, and no other provisions within the policy indicate otherwise. Also, Zurich prepared the policy and sent it to Farner-Bocken at its headquarters in Carroll, Iowa. Docket 20-1. It appears the policy was then executed in Iowa, so the final act necessary to make the policy valid occurred in Iowa. Based on the intention of the parties as expressed in the UIM endorsement and the location where the policy was executed, Iowa law applies.

### A. Whether Charles Luze was a covered insured under the policy issued by Zurich at the time of his death?

The first issue for the court to address is whether Charles Luze was a covered insured under the insurance policy at the time of his death. Because the named insured on this policy was a corporation, the court looks to Section (B)(2) of the policy for the definition of an "insured." Docket 16-6. This section states that an "insured" under the uninsured and underinsured policy includes anyone " 'occupying' a 'covered auto.' " *Id.* at 2. "Covered autos" as described on the Schedule of Coverages and Covered Autos page of the policy lists only category 3 autos. Docket 15-1 at 21. Category 3 autos are defined as "private passenger autos only." *Id.* at 8. Because Charles Luze was occupying a commercial transport vehicle at the time of his death, Charles Luze was not in a covered auto and therefore was not an insured under the UIM policy.

### B. Whether Iowa law allows carriers to limit UIM coverage to certain vehicles?

The second issue for the court to decide is whether Iowa law allows carriers to limit UIM coverage to certain types of vehicles. The Iowa Supreme Court previously upheld policies that limit UIM coverage to certain classes of vehicles. For example, in *Andreson v. Employers Mutual Casualty Co.*, 461 N.W.2d 181, 182-83 (Iowa 1990), an employee, while within the scope of his employment, was injured while driving his own vehicle to a job site. On the declarations page of the policy and next to the UIM coverage space, the policyholder could designate which classes of motor vehicles received this type of coverage. *Id.* at 183. The employer designated only category 2 vehicles as

covered autos. *Id.* Category 2 autos were defined as autos owned by the policy holder, which could include a borrowed auto. *Id.* Because the Iowa Supreme Court determined that the auto in question was borrowed by the employer, it was a covered auto under the policy. *Id.* at 183. In its decision, the Iowa Supreme Court held that certain classes of autos could legally be excluded from UIM coverage. *Id.*

Jeanette Luze argues that Iowa law does not permit carriers to limit UIM coverage to certain types of vehicles, and instead, the coverage follows the person. As support for this position, she relies on *Prudential Life Ins. v. Martinson*, 589 N.W.2d 64 (Iowa 1999). Docket 21 at 5. In *Martinson*, an employee was involved in an auto accident while driving a truck that was owned by his employer, and the employee sought to collect UIM coverage under his family's auto insurance. *Id.* The insurance carrier denied the employee UIM coverage stating that an exclusion for non-owned autos applied because the employee did not own the truck he was driving. *Id.* The Iowa Supreme Court concluded that "not-owned-but-insured" clauses are invalid because the driver does not have control over the coverage of the vehicle that he is driving, so the coverage follows the person as opposed to the vehicle. *Id.* at 66. But the Court was careful to distinguish this situation from those situations where a policy includes an "owned-but-not-insured" exclusion. *Id.* The Court held that "[w]hen an 'owned-but-not-insured' clause comes into play, the insured has control of the vehicle and the coverage on it. If a person decides to buy a small amount of underinsured motorist coverage for it . . . the insured must live with that

choice." *Id.* (quoting *Veach v. Farmers Ins. Co.*, 460 N.W.2d 845, 847 (Iowa 1990)). There, the Iowa Supreme Court held that "not-owned-but-insured" clauses are invalid but upheld "owned-but-not-insured" clauses. *Id.* at 65.

Here, there is no dispute that the vehicle was owned by the insured. Thus, under *Martinson*, the owned-but-not-insured clause is valid because Charles Luze was driving a commercial vehicle that was owned by Farner-Bocken at the time of his accident and Farner-Bocken did not purchase insurance for its commercial vehicles, so Charles Luze was not insured under the policy. This court finds that the exclusion in the UIM policy that limits coverage to certain classes of vehicles is permissible under Iowa law.

**C. Is this a valid exclusion to avoid duplicate coverage?**

The final issue for the court to decide is whether Zurich can limit UIM coverage to avoid duplication of workers' compensation benefits. Iowa Code § 516.2(1)(a) states that UIM coverage "may include terms, exclusions, limitations, conditions, and offsets which are designed to avoid duplication of insurance or other benefits." Iowa Code § 516A.2(1)(a). " '[I]nsurance or other benefits' in the second sentence of § 516A.2 encompasses workmen's compensation." *McClure v. Emp. Mut. Cas. Co.*, 238 N.W.2d 321, 329 (Iowa 1976) (*McCLure I*). But while offsets are permitted under § 516A.2(1), they are not mandatory, and the insurance company is only entitled to an offset of workers' compensation benefits to avoid duplication to the extent that its reduction-of-benefits provision authorizes an offset. *Greenfield v. Cincinnati Ins. Co.*, 737 N.W.2d 112, 117 (Iowa 2007). If an insurance contract does not

7

contain a reduction-of-benefits provision that is authorized by statute, a reduction of benefits may be denied. *Id.* So Iowa law allows Zurich to exclude UIM coverage to avoid duplication of workers' compensation benefits as long as the controlling policy authorizes the exclusion.

Jeanette Luze argues that Zurich's UIM limitation is not permitted under Iowa law because it is for the purpose of avoiding duplicative workers' compensation benefits, and workers' compensation is not encompassed in the definition of "insurance or other benefits" under Iowa Code § 516A.2(1)(a). Docket 13; Docket 21. As support for her argument, Jeanette Luze relies on the decisions in *McClure v. Northland Ins. Co.*, 424 N.W.2d 448, 450 (Iowa 1988) (*McClure II*) and *Condon v. Employers Mutual Casualty Co.* and *McClure II*. Jeanette Luze's reliance on *McClure II* and *Condon* is misguided.

In *McClure II*, the injured driver attempted to collect under his two UIM insurance policies, but both policies contained provisions that allowed the insurers to reduce the coverage limits by amounts received from workers' compensation. *Id.* at 449. Because the workers' compensation benefits exceeded the limits of both policies, the injured driver did not recover under his UIM policies. *Id.* The Iowa Supreme Court held that instead "the amount received by a victim in the form of workers' compensation benefits should be deducted from the total amount of damages sustained by the victim." *Id.* at 450. In other words, workers' compensation is treated the same as recovery from the tortfeasor. *Id.* In *Condon,* the Iowa Supreme Court simply upheld its previous ruling that benefits paid to the widow of a decedent were not

duplicative of insurance benefits paid to the administrator of an estate because a widow and an administrator are two separate entities. 529 N.W.2d at 631. Thus, the insurance company could not use insurance benefits that were paid to the widow to offset the policy limits paid to the administrator of the deceased spouse's estate. *Id.*

The decisions in *McClure II* and *Condon* do not prevent Zurich from limiting Charles Luze's UIM coverage. In those cases, there was not a question of whether the insured was covered by UIM insurance; instead, the issue was how the insurance provider could calculate the payments and whether the carrier could use workers' compensation benefits to offset the policy limits. Here, the issue is whether a private company could consider workers' compensation benefits when deciding the types of vehicles for which it would purchase UIM coverage. Farner-Bocken made the conscious decision not to obtain UIM insurance for its commercial vehicles because it anticipated that workers injured in its commercial vehicles would recover workers' compensation benefits for any injuries in those vehicles, and that type of consideration is permitted under Iowa law.

An insurance provider can exclude UIM coverage to avoid duplicative workers' compensation benefits, but the controlling policy must authorize such an offset. *Greenfield*, 737 N.W.2d at 117.  In *Greenfield*, the Iowa Supreme Court considered the relationship between UIM coverage and workers' compensation. *Id.* The court specifically found that the "Iowa legislature intended to allow insurance companies to offset workers' compensation

benefits against uninsured and underinsured motorist claims," and that the carrier could avoid duplication of benefits to the extent that the policy language provides. *Id.* Here, section II(B)(3) of the insurance policy specifically excludes "[a]ny obligation for which the 'insured' or the 'insured's' insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law." Docket 15-1 at 10. This court agrees with Zurich's stance that UIM coverage can be limited to avoid duplication of benefits—including duplication of workers' compensation benefits because the policy specifically excludes liability to avoid duplication of workers' compensation.

## CONCLUSION

The court finds (1) that Charles Luze was not covered by the UIM policy at the time of his accident because he was in a commercial vehicle, (2) Iowa law permits carriers to limit UIM coverage to certain types of vehicles, and (3) Iowa law allows carriers to avoid duplication of workers' compensation benefits.

Thus, it is ORDERED that plaintiff's motion for partial summary judgment (Docket 12) is denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (Docket 17) is granted.

Dated November 4, 2016.

BY THE COURT:
*/s/Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE